**Darren MYLES,**

v.

**SABINE TRANSPORTATION COMPANY.**

No. Civ.A. 00–2659.

United States District Court, E.D. Louisiana.

April 11, 2001.

Gregory David Guth, Gregory D. Guth, Attorney at Law, New Orleans, LA, for plaintiff.

Keith M. Pyburn, Jr., David P. Bendana, McCalla, Thompson, Pyburn, Hymowitz & Shapiro, New Orleans, LA, for defendant.

## ORDER AND REASONS

CLEMENT, Chief Judge.

Before the Court is Defendant Sabine Transportation Company's Motion for Summary Judgment. For the following reasons, the Motion is GRANTED IN PART and DENIED IN PART.

### A. BACKGROUND

Plaintiff Darren Myles alleges that his former employer, Sabine Transportation Company, ordered him to take a drug test which resulted in a false positive and led to his termination. On September 7, 2000, Mr. Myles filed a Petition for Damages under the Jones Act and Request for Jury Trial, wherein he asserted a claim for wrongful discharge under the general maritime law. Sabine filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on October 11, 2000, arguing that the general maritime law does not recognize a cause of action for wrongful discharge under the facts alleged by Mr. Myles.

In response to Sabine's motion to dismiss, Mr. Myles filed an opposition memorandum and a Supplemental and Amending Complaint ("amended complaint") on October 24, 2000. In the amended complaint, Mr. Myles alleged a violation of the Shipping Acts and asserted claims of negligence under Louisiana and general maritime law. In light of the assertions set forth in his opposition memorandum, the Court construed Mr. Myles' amendment of his complaint as an abandonment of the wrongful discharge claim in favor of new claims not subject to Sabine's motion. Accordingly, the Court denied Sabine's motion to dismiss as moot on November 8, 2000. See Order and Reasons, 2000 WL 336978, 142 Lab. Cas. P. 59,104.

Sabine now moves for summary judgment on three grounds. First, Sabine reasserts its argument that the general maritime law does not recognize a cause of action for wrongful discharge under the facts alleged by Mr. Myles. Second, Sabine argues that Mr. Myles cannot avail himself of the remedy available for a breach of the Shipping Articles under the facts he alleges. Third, Sabine asserts that Mr. Myles' claims are preempted by the Labor Management Relations Act.

### B. LAW AND ANALYSIS

#### 1. Wrongful Discharge Claim

As noted above, the Court construed Mr. Myles' amendment of his complaint as

an abandonment of his original wrongful discharge claim in favor of several new claims. In light of Mr. Myles' opposition to the present motion, the Court remains convinced that this interpretation was correct. Admittedly, Mr. Myles' position with respect to the fate of his wrongful discharge claim has been rather oblique, but the following passage from his present memorandum again indicates that he is no longer pursuing a wrongful discharge claim: "Plaintiff asserted claims based on the unseaworthiness of the vessel and general negligence under the Court's pendent jurisdiction ." Pl's Mem. pp. 1–2. Mr. Myles follows this statement with an argument that the negligence of a physician hired by a vessel is attributable to the vessel, *id.* at 2, but nowhere directly responds to any of Sabine's wrongful discharge arguments.

Although it may be moot, for the sake of clarity, the Court GRANTS Sabine's Motion with respect to Mr. Myles' wrongful discharge claim.

### 2. *Negligence/Medical Malpractice Claims*

█ Based on the argument noted in the previous section, Mr. Myles contends in his opposition memorandum that he may pursue a medical malpractice action against the shipowner for the negligence of its physician in administering the drug test.

Sabine disagrees. In its opinion, no matter how Mr. Myles styles his claim, he is in reality pursuing a claim for wrongful discharge, since "[i]t is the employment decision (*i.e.,* the decision to discharge him based on the allegedly false drug test [result]), not the alleged incompetence of the person administering the drug test that Plaintiff has challenged as unlawful." Def's Reply Mem. p. 2. Relying on its arguments against wrongful discharge, Sa-

bine concludes that Mr. Myles may not pursue his medical malpractice claims.

Sabine's characterization of Mr. Myles' claims is inaccurate. To be sure, the termination of his employment is a key element to Mr. Myles' claim, but so is the fact that the test allegedly resulted in a false positive, which may or may not have been the result of physician negligence. Sabine is also incorrect when it states that the amended complaint does not a state medical malpractice claim: Paragraphs D and E allege that the test was administered negligently, and Paragraph F alleges that "Sabine is liable for the negligent acts of the drug test administrators under the general maritime law and under the doctrine of respondeat superior." Assuming (without deciding) that a botched drug test can constitute medical malpractice, this allegation is sufficient under the liberal federal notice pleading rules to put Sabine on notice that Mr. Myles is pursuing a medical malpractice claim against it.

Whether Mr. Myles may recover on a malpractice claim under the facts he has alleged, however, is another story. Mr. Myles relies entirely on two cases to support the existence of a medical malpractice cause of action under the general maritime law. First, after noting the shipowner's "duty to provide prompt and adequate medical care to its seamen" and its "vicarious[ ] responsib[ility] for the negligence of a physician it chooses to treat its seaman", the Fifth Circuit in *DeCenteno v. Gulf Fleet Crews, Inc.,* 798 F.2d 138, 140 (1986), concluded that there was "sufficient evidence to support the jury's findings that [the ship owner] negligently failed to provide adequate medical treatment to [the seaman] and that such negligence was a cause of [the seaman's] death." Second, in *Central Gulf Steamship Corp. v. Sambula,* 405 F.2d 291, 302 (1968), the Fifth Circuit held that "[a]lthough Dr. Lee was an inde-

pendent practitioner, his engagement by [the ship owner] in the discharge of its medical care duties to [the seaman] made him the agent of [the ship owner]; and thus his deficient medical treatment, therapy, and prescription are attributable to [the ship owner] on agency principles." However, as Sabine correctly notes, the Fifth Circuit has held that "Seaworthy ... means that under the circumstances existing at the time of the injury, the vessel and her equipment ... were reasonably fit to perform the duty of safety, which this vessel owed to human beings aboard her, and to perform duties for which they were intended.'" *Marshall v. Ove Skou Rederi A/S,* 378 F.2d 193, 196 (5th Cir.1967) (quoting *Vickers v.. Tumey,* 290 F.2d 426, 433, n. 5 (5th Cir.1961)).

The Court agrees with Sabine that the doctrine of seaworthiness does not contemplate the type of claim articulated by Mr. Myles. Although the purpose behind testing a seaman for drug use presumably is to promote the safety of a vessel's crew, Mr. Myles has not cited any authority to support his claim that a shipowner has violated its duty to provide medical care or its duty of safety when a physician under its direction negligently administers a drug test to a seaman and causes him to lose his job. A seaman's injury which results from a shipowner's failure to detect another crewmember's drug use perhaps could provide a foundation for the shipowner's liability, but that is not the situation here. Mr. Myles has provided no authority for any other cause of action under the general maritime law that would create liability for his factual allegations. Accordingly, the Court GRANTS Sabine's Motion with

respect to Mr. Myles' general maritime medical malpractice claim.

However, other than implicitly suggesting that it is a wrongful discharge claim in disguise, Sabine has not specifically challenged Mr. Myles' Louisiana state law medical malpractice claim. Accordingly, this claim survives the instant motion.[1]

### 3. *Shipping Articles Claim*

■ In his amended complaint, Mr. Myles alleges that "Sabine's discharge of him was in violation of his rights under the shipping articles." ¶ B. Sabine argues that, under the facts Mr. Myles' alleges, the exclusive remedy for such a violation is provided by 46 U.S.C. § 10313(c):

> When a seaman who has signed an agreement is discharged improperly before the beginning of the voyage or before one month's wages are earned, without the seaman's consent and without the seaman's fault justifying discharge, the seaman is entitled to receive from the master or owner, in addition to wages earned, one month's wages as compensation.

*See also The Steel Trader,* 275 U.S. 388, 48 S.Ct. 162, 72 L.Ed. 326 (1928). Because Mr. Myles was discharged after the voyage began and after one month's wages were earned, Sabine argues that he cannot recover under this statute. Mr. Myles offers no opposition to this argument. Accordingly, the Court GRANTS Sabine's Motion with respect to Mr. Myles' shipping articles claim.

### 4. *LMRA Preemption*

Finally, Sabine states that Mr. Myles was hired as an "ordinary seaman," a position generally covered by Sabine's collec-

---

1. The Court questions whether Louisiana law applies to Mr. Myles' claim since the drug test appears to have been administered in Texas. *See* Def's Statement of Uncontested Material Facts ¶ 12. Mr. Myles also appears to have signed the shipping articles in Texas. *See* Def's Ex. 1D p. 3 ("Particulars of Engagement" listing "Galveston, TX" as "Place and Date of Signing this Agreement").

tive bargaining agreement with the Sabine Transportation Men's Association. Because the CBA contains provisions for drug testing employees, Sabine argues that Mr. Myles' claims arise directly out of the terms and conditions of the CBA and should be preempted by Section 301 of the Labor Management Relations Act.

Importantly, however, Sabine does not assert that Mr. Myles himself was hired as a union member. Nor has Sabine offered any evidence that would support that contention: neither Mr. Myles' application for employment nor his payroll records indicate union membership. Sabine has failed to carry its summary judgment burden with respect to its LMRA preemption argument. *See In re Intelogic Trace, Inc.*, 200 F.3d 382 (5th Cir.2000) (under Federal Rules of Civil Procedure, summary judgment is proper only where, viewing the evidence in the light most favorable to the nonmoving party, the court determines that there is no genuine issue of material fact and judgment is proper as a matter of law); FED. R. CIV. P. 56(c).

### C. *CONCLUSION*

For the reasons set forth above,

IT IS ORDERED that Defendant Sabine Transportation Company's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART.